[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, age fifty-one, and defendant, age fifty-two, were married approximately 26 years ago in North Hampton, Massachusetts. It was his second marriage, her first. Plaintiff has CT Page 3335 been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint. Neither party has received aid or care from the State of Connecticut or is receiving support enforcement services pursuant to Title IV-D of the Social Security Act. All three children, issue of their marriage, have attained the age of majority. No other minor child has been born to the wife since the date of this marriage, and no other minor child is expected. Each testifies that their marriage has broken down irretrievably.
The parties have been separated for more than two years. Plaintiff wife lives in the family home in Glastonbury, Connecticut, as do the three children of the marriage, two of whom are attending college. Defendant husband lives in Florida with a lady friend and, after many years of employment in the automobile business, is now self-employed doing home improvements and showing a gross income of $188 of week, a net of $152. Plaintiff wife is an administrative assistant for the Town of Glastonbury. Her gross and net incomes are $660 and $409.
Plaintiff wife suffers from lupus and experienced a stroke in 1989 for which she was hospitalized for several months. Her speech and physical dexterity appear to have been affected. Functional and employable, she is brittle and tentative. Defendant husband medicates his high blood pressure daily and has suffered a small stroke that caused the loss of 25% of his sight in one eye. Mr. Smith's physical condition appears to be superior to that of his wife.
Extended over a full two day period, the trial focused on fault, home valuation and the division of assets.
Each is convinced the other spouse was responsible for the dissolution of this relationship. Each appears to be sincere and honest in that belief. Yet, given opportunities to make extreme statements about the other, each demurred a number of times. Their personal aggression was exhibited primarily through their lawyers, far less through their own comments. This court was left with the strong feeling that it was listening to two decent people whose relationship had run dry. They had had good years together and then some bad years. Each recognized there was little hope they could recapture the pleasures they once brought each other. It was a sad trial, one the court wishes could have been avoided. I suspect the court's decision and orders will come as no surprise to the experienced counsel involved.
The court finds that each spouse made a contribution to the breakdown of this relationship, but that neither was primarily at fault. The deterioration of the relationship resulted from a series of interlocking events, each spouse contributing from time to time, each spouse being both an instigator and a victim. Therefore, as we turn to the division of the marital assets and alimony, the causes for the CT Page 3336 dissolution will not be a factor.
Having meticulously maintained detailed financial records throughout her adult life, Mrs. Smith uncharacteristically and suddenly ceased to use a check book during the dissolution process, handled all funds in cash — perhaps a result of the stress resulting from her stroke. She was thus unable to offer a satisfactory accounting of $10,000 from the sale of a mobile home.
The general financial history is clear, however. Except for child rearing years, both parties worked. After work, Mrs. Smith was a mother and homemaker, Mr. Smith was a home improver. After work, she raised three children and provided all homemaking services to the family of five while he restored antique cars and improved a series of family homes. Each produced results of value.
Mrs. Smith's mother added $143,000 to the family's finances and received a promise of a lifetime of care. She lived with the Smith's for eight years. The money is gone, having been used for constructing an apartment for her in the Smith family home, educating the children, mortgage payments, perhaps automobiles for the children, an unsuccessful investment in silver, the antique automobiles Mr. Smith restored, vacation expenses and other lifestyle enhancements.
A portion of Mrs. Smith's pension plans, clearly marital assets, have been invaded by her and spent. Mr. Smith behaved just as inappropriately, taking funds from a marital equity line of credit for his own personal use. Because the asset issues are not clearly joined and the numbers are not clearly ascertainable, the court concludes those issues are in general balance and therefore will not be included in its decision.
Two skilled and experienced real estate appraisers gave conflicting expert testimony, each staunchly supporting a valuation that enhanced the position of the client signing their check. The court finds both appraisals unreliable, under the circumstances. Obviously, great deal of Smith money and court time would have been spared had the parties stipulated to the findings of a single acceptable appraiser. The court finds the fair market value of 297 Wickham Road, Glastonbury, Connecticut, to be $320,000.
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations in Title 46b, Chapter 815j of the Connecticut General Statutes, with particular emphasis on Sec. 46b-81 (c), this court finds that the marriage has broken down irretrievably and directs that a decree of dissolution shall enter. The following orders shall also enter:
1. FAMILY HOME CT Page 3337
a. Defendant husband shall transfer all of his right, title and interest in 297 Wickham Road, Glastonbury, to the defendant via quit claim deed within seven days hereof.
b. Simultaneously therewith, plaintiff wife shall sign a mortgage deed and note thereon, prepared by defendant, for $50,000 at seven percent interest per annum to be amortized over a period of fifteen years in 180 consecutive equal monthly payments of $494.36 each, beginning May 1, 1995. Any balance due is to be paid in full upon plaintiff's death, her remarriage, or her failure to continue living therein.
2. ALIMONY
a. Defendant shall pay alimony of $1 a year to plaintiff until her sixty-fifth birthdate, non-modifiable as to term, modifiable as to amount only upon medical evidence that her physical condition has so deteriorated from this date that she has since become physically unable to continue employment.
b. Defendant shall receive no alimony from plaintiff.
3. PENSION PLANS
Plaintiff shall retain title to her ICMA and CIGNA pension plans.
4. DEBTS
a. Defendant shall pay defendant a total of $1500 towards the Visa bill at the rate of $50 per week beginning April 12, 1991 and every Friday thereafter.
b. Each of the parties shall pay their own debts and attorney's fees.
5. COUNSEL FEES
Each party shall pay their own counsel fees.
6. MEDICAL INSURANCE
Each party shall provide their own medical insurance coverage.
7. PERSONAL PROPERTY
Each party shall retain title to the personal property now within their control.
Joseph L. Steinberg, Judge CT Page 3338